**IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **IN RE:**<br><br>**SHYLENE MARIE COX SANTIAGO**<br><br><br><br>**Debtor(s)** | **CASE NO.   14-06617  BKT**<br><br>**Chapter     13**<br><br>**Adversary No.  15-00186** |
| **SHYLENE MARIE COX SANTIAGO**<br><br>**Plaintiff**<br><br>**vs.**<br><br>**SCOTIABANK DE PUERTO RICO; MOTORAMBAR, INC.; ALEJANDRO OLIVERAS, CHAPTER 13 TRUSTEE**<br><br>**Defendant(s)** | <span style="color:red">**FILED & ENTERED ON 06/27/2017**</span> |

**<u>OPINION & ORDER</u>**

Before the court is Co-Defendant Motorambar, Incorporated's *Summary Judgment Motion* (hereinafter "Motorambar") [Dkt. No. 66]; Plaintiff/Debtor Shylene Marie Cox Santiago's *Reply to Motion for Summary Judgment DKT 68* (hereinafter "Cox Santiago") [Dkt. No. 80]; Motorambar's *Tendered Reply to Opposition to Summary Judgment Motion* [Dkt. No. 84] and Co-Defendant

Scotiabank de Puerto Rico's *Motion to Submit Position as to Co-Defendant's Summary Judgment Motion, Plaintiff's Opposition, and Co-Defendant's Reply* (hereinafter "Scotiabank) [Dkt. No. 106].

### Factual Background

The court determines that the following facts are not in dispute:

1. On July 2, 2010, Cox Santiago and Motorambar signed a purchase order for a new 2010 Infinity FX35 ("Infinity") bearing vehicle identification number JNBAS1MUXAM801891.

2. At the time, Cox Santiago owned a 2007 BMW X 5 with 83,251 miles.

3. The BMW had been financed by First Bank and the outstanding lease balance was $37,856, with monthly lease payments of $1,231.

4. The BMW's trade-in value was $27,000, approximately.

5. At Cox Santiago's request, Motorambar agreed to take the BMW as a trade-in and to cancel the debt owed to First Bank.

6. The $10,856 difference between the BMW's $27,000 trade-in value and the $37,856 owed on the lease were rolled-over onto the new lease that Cox Santiago took out to finance the Infinity.

7. On July 2, 2010, Cox Santiago and Motorambar executed a Retail Installment Sales Contract ("Contract") with financing to be provided by Scotiabank.

8. In total, Cox Santiago's Contract for the Infinity amounted to $68,750, payable in seven years, through equal monthly installments of $1,092.63. The annual interest rate was 8.45%.

9. The Contract stated that Motorambar would assign its rights to Scotiabank, and it delineated in plain language the terms of the assignment in a section captioned 'CONDITIONS OF THE ASSIGNMENT.' Motorambar rubberstamped the signature space of the assignment section of the Contract with a black-ink stamp that read as follows: 'Motorambar, Inc. PO Box 366239, San Juan, PR00920-6239.' Cox Santiago and a sales executive from Motorambar signed the Contract in a space immediately below the assignment section bearing Motorambar's rubberstamp.

10. Cox Santiago disbursed no cash in the transaction with Motorambar. Nor did she provide Motorambar with an advance payment for the purchase of the Infinity.

11. On August 12, 2014, Cox Santiago filed for chapter 13 bankruptcy protection. Bankruptcy Case No. 14-06617, Docket No. 1.

12. At the time of the filing, Cox Santiago owed $37,420 to Scotiabank for the Infinity as per proof of claim number 3-1.

Cox Santiago commenced the present adversary proceeding on July 29, 2015 pursuant to 11 U.S.C. § 547, seeking to avoid a lien over a vehicle she purchased on credit in July 2, 2010. The vehicle was sold by Motorambar, who, within the same transaction, assigned all its rights and credits to Scotiabank . Although, Motorambar is not a creditor of Cox Santiago, it was included as a Co-defendant in this case through an Amended Complaint [Dkt. No. 23] prompted by a motion to dismiss Scotiabank filed on lack of indispensable party grounds. As to Motorambar, the Amended Complaint makes three claims: (i) that the assignment of credits is invalid, because the Contract was rubberstamped, rather than signed; (ii) that the lien over the vehicle was not perfected within the timeframe provided under 11 U.S.C. § 547, because Motorambar allegedly failed to file the necessary paperwork with the Puerto Rico Department of Transportation and Public Works; and (iii) that the Contract is invalid because it failed to disclose the amount allegedly credited in the transaction for a BMW Cox Santiago gave as trade-in.

**Standard of Review: Summary Judgment**

The role of summary judgment is to look behind the facade of the pleadings and assess the parties' proof in order to determine whether a trial is required. Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003). Pursuant to Fed. R. Civ. P. Rule 56(c), made applicable in bankruptcy by Fed. R. Bankr. P. 7056, a summary judgment is available if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

law. Fed. R. Civ. P. 56(c); Borges ex rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4 (1st Cir. 2010). As to issues on which the Movant, at trial, would be compelled to carry the burden of proof, it must identify those portions of the pleadings that it believes demonstrate there is no genuine issue of material fact. In re Edgardo Ryan Rijos & Julia E. Cruz Nieves v. Banco Bilbao Vizcaya & Citibank, 263 B.R. 382, 388 (B.A.P. 1st Cir. 2001). A fact is deemed "material" if it could potentially affect the outcome of the suit. Borges, 605 F.3d at 5. Moreover, there will only be a "genuine" or "trial worthy" issue as to such a "material fact," "if a reasonable fact-finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor." Id. at 4. The court must view the evidence in the light most favorable to the nonmoving party. Alt. Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 26 (1st Cir. 2004).

Therefore, summary judgment is "inappropriate if inferences are necessary for the judgment and those inferences are not mandated by the record." Rijos, 263 B.R. at 388. Although this perspective is favorable to the nonmoving party, she still must demonstrate, "through submissions of evidentiary quality, that a trial worthy issue persists." Iverson v. City of Boston, 452 F.3d 94, 98 (1stCir. 2006). Moreover, "[o]n issues where the non Movant bears the ultimate burden of proof, [she] must present definite, competent evidence to rebut the motion." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir.1991). These showings may not rest upon "conclusory allegations, improbable inferences, and unsupported speculation." Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir.1990). The evidence offered by the nonmoving party "cannot be merely colorable, but must be sufficiently probative to show differing versions of fact which justify a trial." Id.; See also Horta v. Sullivan, 4 F.3d 2, 7-8 (1st Cir. 1993) (holding that the materials attached to the motion for summary judgment must be admissible and usable at trial). "The mere existence of a scintilla of

evidence" in the nonmoving party's favor is insufficient to defeat summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); González-Pina v. Rodríguez, 407 F.3d 425, 431 (1st Cir. 2005).

**Legal Analysis**

The court will take each allegation against Motorambar in turn. Cox Santiago argues that the assignment of the Contract was ineffective because it was not signed by Motorambar, the assignor, but rather a rubber stamp was placed instead of the signature, in the assignment section of the Contract. In Puerto Rico, parties to a contract "may make the agreement and establish the clauses and conditions that they deem advisable, provided they are not in contravention of law, morals or public order". P.R. Laws Ann. tit. 31, § 3372. Contracts are perfected by mere consent, and once perfected, the contracting parties are bound, not only to fulfill the express terms of the agreement, but also to respond for any damages that may arise from a breach. P.R. Laws Ann. tit. 31, § 3376; Unisys v. Ramallo Brothers., 129 D.P.R. 13 (1991); Producciones Tommy Muñiz v. COPAN, 113 D.P.R. 517, 526-27 (1982). A valid contract need not be executed in accordance with any prescribed form; thus, "[c]ontracts are normally binding regardless of the 'form in which they may have been executed, provided the essential conditions required for their validity exist.'" Garita Hotel Ltd. Partnership v. Ponce Federal Bank, F.S.B., 954 F.Supp. 438, 452–454 (D.P.R. 1996), *affirmed by* 122 F.3d 88, 89 (1st Cir.1997) (P.R. Laws Ann. tit. 31, § 3451. No formalities are necessary for an assignment contract to be valid and binding. See Celta Agencies, Inc. v. Denizcilksanayi Ve Ticaaret, A.S., 396 F.Supp.2d 106, 111 (D.P.R.2005) ("under Puerto Rico legal provisions there are no formal requirements to an assignment nor must it appear in writing …..") (citing, Consejo de Titulares v. CRUV, 132 D.R.R. 707, 729 (1993)). And, unless otherwise stated by contract, a debtor need not

approve or even be made aware of an assignment of a credit owed by him. P.R. Law Ann. tit. 31 § 3942; see also, Consejo de Titulares, 132 D.R.R. 707.

In the present case, the evidence of record shows that Motorambar validly assigned the Contract to Scotiabank. Under Puerto Rico law, creditors such as Motorambar are free to assign their contractual rights at will. P.R. Law Ann. Tit. 31 § 3029; see also, Consejo de Titulares, 132 D.R.R. 707. It is well settled that no formalities must be followed for that purpose. Id. Therefore, rubberstamped or not, the assignment of the Contract to Scotiabank is on par with the applicable law. Cox Santiago's assertions as to the differences in the location of the rubber stamps and the signatures on the Contract filed by Scotiabank with the proof of claim, and by Motorambar in their summary judgment motion are not borne out by the evidence.

Under 11 U.S.C. § 547(b) of the Bankruptcy Code, a trustee or debtor may avoid as a preference, a transfer of a debtor's interest in property which satisfies each of the following elements:

> a) The transfer was made to or for the benefit of a creditor (11 U.S.C. § 547(b)(1));
>
> b) The transfer was made for or on account of an antecedent debt owed by the debtor at the time the transfer was made (11 U.S.C. § 547(b)(2));
>
> c) The transfer was made when the debtor was insolvent based on the balance sheet definition of liabilities exceeding assets (11 U.S.C. § 547(b)(3));
>
> d) The transfer was made during the ninety day preference period in the case of transfers to non-insider creditors, and within one year of the bankruptcy filing for transfers to the debtor's insiders, such as the debtor's officers, directors, controlling shareholders and affiliated companies (11 U.S.C. § 547(b)(4)); and
>
> e) The transfer enabled the creditor to receive more than the creditor would have recovered
> on the subject claim in a chapter 7 liquidation of the debtor (11 U.S.C. § 547(b)(5)).

Once a trustee proves the statutory elements of 11 U.S.C. § 547(b), the burden shifts to the creditor defending a preference claim to prove one or more of the affirmative defenses contained in 11 U.S.C. § 547(c) to reduce or completely eliminate its preference exposure. Whether a transfer is made within the preferential period is a threshold inquiry for the application of Section 547. See, e.g., In re Chancellor, 20 Bankr. 316, 318 (Bankr. W.D. Ky. 1982). In this case, the evidence provided demonstrates that the lien over Cox Santiago's Infinity was perfected several years before the preferential period. The court fails to see the applicability of Section 547 to the facts of this case.

Plaintiff's last allegation, citing the Truth in Lending Act 15 U.S.C. §§ 1601 et. seq., states that the Contract is invalid because it fails to disclose the amount credited in the transaction for a BMW Cox Santiago gave as trade-in. The Contract briefly describes the BMW automobile as required by law. Motorambar, in its motion and supporting documentation, asserts that the BMW vehicle had a balance owing which debt was rolled into the new loan with Scotiabank. Therefore the Contract properly lists the BMW vehicle, but provides no amount in credit, since none was given.

The court will address one last matter with regards to Co-defendant Scotiabank. The court determines that the documents provided by the parties, specifically the Certificate of Ownership issued by the Puerto Rico Department of Transportation ("Title") shows that the vehicle was registered on July 2, 2010. The date of August 11, 2011, which is frequently cited by Cox Santiago as the date the lien was perfected, refers to the date the Title was issued. There is no evidence to show that the date of August 11, 2011 has any other significance.

**Conclusion**

Therefore, for the reasons stated Co-Defendant Motorambar, Incorporated's *Summary Judgment Motion* [Dkt. No. 66] is GRANTED. Moreover, the court takes into consideration

Scotiabank de Puerto Rico's *Motion to Submit Position as to Co-Defendant's Summary Judgment Motion, Plaintiff's Opposition, and Co-Defendant's Reply* [Dkt. No. 106] and GRANTS Scotiabank summary judgment on all allegations in the Complaint and the Amended Complaint.

SO ORDERED

San Juan, Puerto Rico, this 27th day of June, 2017.

Brian K. Tester
U.S. Bankruptcy Judge